LANDERS, FRARY AND CLARK *v.* LOCAL 207, UNITED
ELECTRICAL, RADIO AND MACHINE WORKERS
OF AMERICA

SUPERIOR COURT          HARTFORD COUNTY          FILE No. 118466

Memorandum filed January 13, 1960

*Maguire & Cole,* of Stamford, for the plaintiff.

*Samuel Gruber,* of Stamford, for the defendant.

TROLAND, J. This is an application by the plaintiff for an order of this court vacating an award of arbitrators made July 24, 1959, on a written submission by the parties. The plaintiff is a Connecticut corporation located in New Britain and is hereinafter referred to as the company. The defendant is a voluntary association located in New Britain and is hereinafter referred to as the union. The company and the union entered into a written contract dated September 5, 1957, to be effective from August 5, 1957, until August 2, 1959, governing wages, hours and other working conditions of employees of the company.

Effective on August 1, 1958, the company terminated the employment of one Vito Arre, the company designating and characterizing such action as the retirement of said Vito Arre, pursuant to a claimed long-established and well-known procedure for retirement of employees of the company, whether within the collective bargaining unit or not. On July 31, 1958, the union filed a grievance protesting the forthcoming retirement of Arre, claiming that such action was contrary to a voluntary retirement plan and in violation of the contract dated August 5, 1957. The grievance remaining unsettled, the union claimed it for arbitration pursuant to the contract.

It was the position of the company that the retirement of Arre did not raise any point under the contract that was arbitrable. Thus there was a dispute between the parties as to whether it was an arbitrable matter, and whether the collective bargaining contract was involved.

In the contract between the parties, it is provided in article X, § 1: "The issue for arbitration shall be determined by agreement between the parties, but in case of failure of the parties to agree upon the existence of an issue, a Board of Arbitration may determine the question whether there is any issue involving the interpretation and application of provisions of this contract, and if it finds that there is any such issue, it shall then define such issue for hearing by a Board of Arbitration on the merit. The same impartial person shall not serve both on the Board which determines the question of arbitrability and on the Board which hears the same case on the merits, unless both parties agree that he may do so."

A written submission for arbitration was finally agreed to by the parties as follows: "Did the termination by the Company of the employment of former

employees Arre and Fusco on August 1, 1958, and January 1, 1959, respectively, covered by the notices hereto annexed, give rise to an issue involving the interpretation and application of provisions of the collective bargaining contract now in effect between the parties so as to be arbitrable under said contract?"

Thereafter the arbitrators made their award as follows:

"WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the Arbitration Agreement entered into by the above-named Parties, and dated August 5, 1957 and having been duly sworn and having duly heard the proofs and allegations of the Parties, award, as follows:

"The termination by the Company of the employment of former employee Arre on August 1, 1958, covered by the notice annexed to the submission to arbitration, gave rise to an issue involving the interpretation and application of provisions of the collective bargaining contract now in effect between the parties so as to be arbitrable under the contract.

"The issue to be arbitrated is: 'Did the Company violate the collective bargaining contract now in effect between the parties by the termination of the employment of Arre on August 1, 1958. If so, to what remedy is the Union entitled?'

"The Union's grievance respecting Mr. Steve Fusco was withdrawn.

"PAUL R. HAYS, CHAIRMAN

ERNEST FRICK, ARBITRATOR
Concurring

WALTER P. KNAUSS, ARBITRATOR
Dissenting"

The company now claims that in making above award, the arbitration board misconstrued its duties and powers and did not make the type of study and inquiry it was required to do in order to determine the question of arbitrability. The company does not ask the court to decide whether the matter was arbitrable. It does not ask the court to review the facts. The company offers no evidence to establish its claim as above other than the opinion of the arbitrators, attached to the award, which is an exhibit in the case. The opinion of the arbitrators is set out in the footnote.[1] It appears therefrom that the

---

[1] EXHIBIT C

AMERICAN ARBITRATION ASSOCIATION, ADMINISTRATOR VOLUNTARY LABOR ARBITRATION TRIBUNAL

\* \* \* \* \* \* \* \* \* \* \* \* \*

In the Matter of the Arbitration between

UNITED ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA, LOCAL 207

and

LANDERS, FRARY AND CLARK COMPANY

L-24455-HART-L-56-59

OPINION

\* \* \* \* \* \* \* \* \* \* \* \* \*

The parties having failed to agree upon the existence of an issue arbitrable under their collective bargaining contract, the following provisions of Article X of that contract are applicable to the present proceeding:

"The issue for arbitration shall be determined by agreement between the Parties, but in case of failure of the Parties to agree upon the existence of an issue, a Board of Arbitration may determine the question whether there is any issue involving the interpretation and application of provisions of this Contract, and if it finds that there is any such issue, it shall then define such issue for hearing by a Board of Arbitration on the merit."

It is the Employer's position that Arre was retired under a retirement plan which, to the knowledge of the Union, has been in existence for a number of years.

The Union claims that the termination of Arre's employment raises questions as to the interpretation and application of provisions of the contract relating to seniority and discharge, as well as a provision under which the Employer agrees to continue in effect a certain plan of benefits upon retirement.

It is not the province of the present Board, which is expressly excluded from that function, to determine whether the termination of

arbitrators first gave a categorical answer to the question submitted, in the strictest conformity with the submission. They decided there was an issue involving the interpretation and application of provisions of the contract which was arbitrable under said contract. The arbitrators then defined the issue to be arbitrated as follows: "Did the company violate the collective bargaining contract now in effect between the parties by the termination of the employment of Arre on August 1, 1958? If so, to what remedy is the Union entitled?"

It is well settled that the award must conform to

---

Arre's employment did or did not constitute a violation of the contract between the parties. The sole power of this Board is to determine whether the Union's grievance with respect to that termination raised any question of interpretation or application of the contract which is arbitrable under that contract, and, if it finds that there is such an issue for arbitration, to formulate that issue.

The issue of arbitrability always presents a difficulty. In deciding on arbitrability the arbitrator must steer a course somewhere between the error of holding arbitrable a claim, which is asserted to be based on the contract, where the connection with the contract is merely colorable, and the error of rejecting a claim of arbitrability because it is reasonably clear to him that one of the parties is entitled to win on the merits. This course cannot be formulated in an exact definition which will dispose of the issue in cases as they arise. The hundreds of court decisions and arbitration awards on the issue of arbitrability, constitute an impressive demonstration of the difficulty of the issue, but afford little guidance, except in the most general terms, for the resolution of that issue in situations which differ from those already decided.

Perhaps the closest one can come to setting forth the standard of determination is to state that an issue is arbitrable under an "interpretation or application" clause, if the party seeking arbitration supports its claim of arbitrability by presenting an issue which, prima facie, appears to involve the interpretation or application of one or more provisions of the agreement. If, as in the present case, arbitrability is challenged on the ground that the issue presented does not arise under the contract because of some practice, agreement or understanding separate from the contract, then it may be necessary for the party seeking arbitration to show at least the existence of a controversy over the existence or effect of such separate practice, agreement or understanding.

Surely in the present situation the Union has met these requirements. There have been dozens of arbitrations involving the ap-

the submission and no matter outside the submission may be included in the award. *American Brass Co.* v. *Torrington Brass Workers' Union*, 141 Conn. 514, 521; *Niles-Bement-Pond Co.* v. *Amalgamated Local 405*, 140 Conn. 32, 36; *New Britain Machine Co.* v. *Lodge 1021*, 143 Conn. 399, 404.

The definition of the issue as made by the arbitrators in the second paragraph of the "Award" is beyond the submission. However, this action of the arbitrators is authorized and directed by the provisions of the contract in "Article X Arbitration,"

---

plication of a discharge clause to "involuntary retirements." Many of them, perhaps most, have held that such a retirement is not a violation of the agreement where a long continued practice of making such retirements has been known to Union and, in the absence of evidence of protest, apparently accepted by it. One or two such cases have been decided on the issue of arbitrability. But the very formulation of the issue in terms of the factual evidence obviously required to show long continued practice must demonstrate that the issue is one concerning the application of the contract to the situation presented. It is difficult to imagine a decision which is more clearly one on the merits than would be a decision that a "retirement" is or is not a "discharge," where the decision is rested on whether or not there is a long continued practice of "retirement."

Under Article XIII, Section 3 of the contract between the parties the Employer agrees to continue in effect a retirement plan which is described in the provision. The Union claims, and the Employer concedes, that this plan provides for voluntary retirement. The Employer insists that an entirely separate system of involuntary retirement exists—under a plan which was never negotiated with the Union. The Union denies that there ever was such a separate plan, and urges that Article XIII provides the exclusive method of retirement for age, i.e. voluntary retirement. The evidence as to the existence of a separate unnegotiated plan for involuntary retirement is conflicting. Clearly this issue is one which involves the "application" of Article XIII, Section 3.

Perhaps it ought to be added that nothing in this opinion is intended to express any view as to how this controversy should be decided on the merits. The issues raised by the parties have been discussed only in connection with determining whether or not they present questions which must be arbitrated under the contract. That the contract requires such arbitration seems clear to a majority of the Board.

PAUL R. HAYS, ARBITRATOR

DATED: July 24, 1959.

quoted above, which stated "a Board of Arbitration may determine the question whether there is any issue involving the interpretation and application of provisions of this contract, and if it finds that there is any such issue, *it shall then define such issue for hearing by a Board of Arbitration on the merit."* (Italics supplied.)

It was a duty that rested on the arbitrators. To be very technical about it, one might say the award should have been on one paper, and the definition of the issue thereafter to be arbitrated should have been on another. However, the law does not require the doing of a vain thing, and the court cannot hold and does not hold that the award, if otherwise proper, should be vacated because of the inclusion, in the document reciting the answer to the question propounded, of the second paragraph defining the issue for later arbitration.

The company contends that the arbitrators did not properly perform their duties because in their opinion, they undertook to set forth a "standard of determination" for determining whether an issue is arbitrable. Particular objection is made to this statement by the arbitrators: "Perhaps the closest one can come to setting forth the standard of determination is to state that an issue is arbitrable under an 'interpretation or application' clause, if the party seeking arbitration supports its claim of arbitrability by presenting an issue which, prima facie, appears to involve the interpretation or application of one or more provisions of the agreement."

This, however, is not all the arbitrators said. It appears from the award itself that the parties appeared and presented proofs and allegations. The opinion states that the union showed the existence of a controversy over the existence of a practice

claimed by the company to permit retirement on a basis separate from the contract. The union denied the existence of such a plan. Article XIII § 3, of the contract provides a method of retirement claimed by the union to be exclusive.

There are a number of decisions in Connecticut holding that the memorandum of an arbitrator is irrelevant and that it is the award, rather than the finding and conclusions of fact, that controls. *American Brass Co.* v. *Torrington Brass Workers' Union,* supra, 522; *New Britain Machine Co.* v. *Lodge 1021,* supra; *United States Time Corporation* v. *Waterbury Watch Workers Union,* 15 Conn. Sup. 391, 395 (*Inglis, J.*). It has seemed proper, however, and the court has read and considered the whole opinion of the arbitrators together with the pertinent articles of the contract between the parties. The arbitrators were aware and careful to note that the issue of arbitrability always presents a difficulty. They did not attempt to pass on or determine whether the termination of Arre's employment did or did not constitute a violation of the contract between the parties. They did determine that the union's claimed grievance with respect to that termination raised a question of interpretation or application of the contract which is arbitrable under that contract. Having determined that there was an arbitrable issue under the submission, the board of arbitrators then formulated or defined that issue.

Plaintiffs complain only of the last sentence of the issue as defined, namely the statement "If so, to what remedy is the Union entitled?" The board of arbitrators had the right, under the contract, to define the complete issue.

The court finds that the board of arbitrators has not exceeded its powers, or so imperfectly executed them that a mutual final and definite award on the subject matter submitted was not made.

No correction of the award is required to effect the intent thereof and promote justice between the parties.

Judgment may enter sustaining the award.